IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSE VILLASENOR, on behalf of himself and the classes defined herein,<br><br>        Plaintiff,<br>v.<br><br>AMERICAN SIGNATURE, INC., doing business as VALUE CITY FURNITURE; WORLD FINANCIAL NETWORK NATIONAL BANK; and ALLIANCE DATA SYSTEMS CORPORATION,<br><br>        Defendant. | Case No. 06 C 5493<br><br>Judge Virginia M. Kendall |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jose Villasenor ("Villasenor") filed an original and Amended Complaint against American Signature, Inc. d/b/a Value City Furniture ("VCF"), World Financial Network National Bank (the "Bank") and Alliance Data Systems Corporation ("ADS"), bringing claims under the Truth in Lending Act ("TILA") and Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") as well as claims of unjust enrichment and breach of contract and a claim for a declaratory judgment under the Illinois Retail Installment Sales Act. Each of Villasenor's claims related to an allegedly deceptive and misleading sales promotion called the "Real Deal." Villasenor alleges that Defendants affirmatively misrepresented that they were offering interest-free financing on furniture purchases until 2011 and then surreptitiously switched consumers to financing arrangements involving the payment of interest. The Bank, ADS and VCF filed Motions to Dismiss the Amended Complaint, and this Court sustained only Villasenor's claim for statutory damages under the TILA.

Villasenor filed a Second Amended Complaint containing only two counts: (1) the original surviving TILA claim for statutory damages and (2) a claim for alleged violations of the ICFA. The Defendants moved again to dismiss Villasenor's claims under the Illinois Consumer Fraud Act. For the reasons stated below, this Court grants the Motions to Dismiss.

## STATEMENT OF FACTS

In the fall of 2006, Villasenor visited a VCF store located at 8310 S. Cicero Avenue in Burbank, Illinois after he observed a sign in the window of that store advertising "no interest 'til 2011." (2d Am. Compl. ¶ 16.) The sign advertised a program that VCF called the "Real Deal;" a program widely promoted by VCF and designed and implemented jointly by Defendants. *Id*. at ¶17. Similar signs were placed conspicuously in all other VCF stores. *Id*. at ¶18. He purchased a dinette set, a loveseat, two tables, a bedroom set, and a TV cart. *Id*. at ¶19. Villasenor opened a private label VCF credit card account and charged his purchase to a VCF credit card account that he opened. *Id*.

Both ADS and the Bank assist VCF in providing private label credit cards to VCF customers. *Id*. at ¶11. The cards are branded with VCF's name and logo and can be used only at VCF or affiliated stores. *Id*. VCF acts as the agent of the Bank with respect to the private label credit card program - it invites consumers to apply for credit and takes applications for the cards on behalf of the Bank. *Id*. at ¶¶14-15. VCF also delivers required disclosures related to the cards on behalf of the Bank. *Id*. at ¶15. ADS provides VCF with certain services related to the cards, including account acquisition and activation, receivables funding, card authorization, card issuance, statement generation, remittance processing, customer service functions, and marketing services. *Id*. at ¶12.

The credit card agreement for Villasenor's VCF credit card account provided that:

> If a promotional Credit Plan is offered at the time you open your credit card account, this Agreement will include information about the terms for the [promotional] Plan (which may include . . . the ANNUAL PERCENTAGE RATE . . .) by use of an insert, attachment, or other written information provided as part of or with this Agreement.

*Id*. at ¶24.

VCF provided Villasenor with an "insert, attachment, or other written information" regarding the Real Deal promotion in the form of a glossy red, white and black booklet. *Id*. at ¶25. The Booklet provided, in pertinent part, that:

> No interest charges apply on promotional credit plan purchases if the balance is paid in full before the promotional period ends (20, 30, 40, 50, or 60 months from the date of purchase, depending upon the plan you enrolled in). If the promotional credit-plan is not paid in full before the promotional period ends, the remaining balance plus interest will be included in your regular revolving balance and regular credit terms apply.

*Id*. at ¶29. When Villasenor purchased the furniture, VCF provided him with a cash register receipt indicating the terms of his purchase were "50 month plan / no interest." *Id*. at ¶30. The receipt also provided a "supplemental disclosure" that stated:

> The Real Deal offers customers a choice of paying for merchandise in one of several ways: (1) cash/check/bank charge/3 or 5 month payment plan ("Cash Plan"); (2) twenty month payment plane ("20 Month plan"); (3) thirty month payment plan ("30 Month Plan"); (4) forty month payment plan ("40 Month Plan"); (5) fifty month payment plan ("50 Month Plan"); and (6) sixty month payment plan ("60 Month Plan")
>
> Customers who select the 50 Month Plan will pay a price that is $ 704.64 greater than
> the price paid by customers who select the Cash Plan. This difference is a FINANCE CHARGE. The ANNUAL PERCENTAGE RATE of the FINANCE CHARGE is 10.540%.

(*Id*. at ¶30.)

**STANDARD**

"A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of a complaint for failure to state a claim upon which relief may be granted." *Johnson v. Rivera*, 272 F.3d 519, 520-21 (7th Cir. 2001). In ruling on a motion to dismiss, the court must assume all facts alleged in the complaint to be true and must view the allegations in the light most favorable to plaintiffs. *Singer v. Pierce & Assocs., P.C.*, 383 F.3d 596, 597 (7th Cir. 2004). However, "it is not . . . proper to assume that [the plaintiff] can prove facts that it has not alleged." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007) (quoting *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters et al*, 459 U.S. 519, 526 (1983)). In addition, an ICFA claim "must be pled with the same particularity and specificity as that required under common law fraud under Rule 9(b)." *Walker v. S.W.I.F.T. SCRL*, 491 F. Supp. 2d 781, 794-95 (N.D. Ill. 2007), *dismissed on remand on other grounds* (citing *Costa v. Mauro Chevrolet, Inc.*, 390 F. Supp. 2d 720, 731 (N.D. Ill. 2005))

**ANALYSIS**

Villasenor brings a cause of action under Section 2 of the ICFA.[1] To state a private cause of action for practices proscribed by Section 2 of the ICFA, "a plaintiff must establish: (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill.2d 100, 180 (2005) (citing *Oliveira v. Amoco Oil Co.*, 201 Ill.2d 134, 149 (2002)). To properly allege the element of proximate causation in a private cause of action brought

---

[1] Villasenor admits in his Response that allegations (a) and (b) contained in ¶57 of his Second Amended Complaint, both referring to Defendants' duties under the TILA do not apply to VCF.

4

under the ICFA, "a plaintiff must allege that he was, in some manner, deceived." *Oliveira*, 201 Ill.2d at 155; *see also Avery*, 216 Ill.2d at 200 ("it is not possible for a plaintiff to establish proximate causation unless the plaintiff can show that he or she was, 'in some manner, deceived' by the misrepresentation."). "In other words, a damages claim under the ICFA requires that the plaintiff was deceived in some manner and damaged by the deception." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513-14 (7th Cir. 2006) ("there is no per se violation that automatically makes defendant liable") (citing *Oliveira*, 201 Ill.2d at 155). Accordingly, those "who 'knew the truth' do not have valid ICFA claims because they cannot claim to have been deceived." *Id.* at 514 (citing *Oliveira*, 201 Ill.2d at 155).

In its original opinion, this Court dismissed Villesenor's claim ICFA claim, finding that he was not actually deceived because the finance charges he complains of were disclosed on the cash register receipt. Villesegnor now argues that the deception occurred when he saw the "Real Deal" sign and elected to enter VCF. That is, once he saw the advertisement, he was damaged because he was forced to choose between being damaged by paying a higher price for furniture than the sign indicated or by losing the time spent shopping at VCF. This argument fails because even assuming that Villesegnor was deceived, he is still unable to establish he suffered damages proximately caused by the alleged deception.[2]

**Villasenor's Alleged Monetary Damages were not Proximately Caused by the Advertisement**

First, Villasenor's alleged monetary damages, were not proximately caused by the alleged deception. As noted in this Court's prior opinion, under Illinois law, a party that signs a document

---

[2]Since this Court dismisses Villasenor's claim on the issue of proximate causation, it need not and does not reach the issue of the voluntary payment doctrine.

is charged with knowledge of its contents whether or not the party actually read the entire agreement. *See Melena v. Anheuser-Busch, Inc.*, 219 Ill.2d 135, 150 (2006) ("a party to an agreement is charged with knowledge of and assent to the agreement signed") (citing *Black v. Wabash, St. Louis & Pac. Ry. Co.*, 111 Ill. 351, 358 (1884) ("Where a party . . . deliberately signs a written agreement without informing himself as to the nature of its contents, he will nevertheless be bound, for in such case . . . it was his duty to know, particularly where the means of information are within his immediate reach, and he neglects to avail himself . . . ")). Villasenor admits in his Second Amended Complaint that the receipt disclosed the terms of the sale. 2d. Amend. Cmplt. at ¶ 30. Thus, at the point when he incurred the monetary damages, he "knew the truth," and the alleged deception did not proximately cause the monetary damages. *See Oshana*, 472 F.3d at 514, citing *Oliveira*, 776 N.E.2d at 163-64; *see also Shannon v. Boise Cascade Corp.*, 805 N.E.2d 213, 219 (Ill. 2004) ("in the absence of any evidence that . . .persons were actually deceived, it is entirely possible that they . . . 'knew the truth' but elected to use Boise Cascade's product anyway"); *Talbert v. Home Savings of America, N.A.*, 638 N.E.2d 354, 356 (Ill.App.Ct. 1994) (plaintiffs signed agreement after "terms of several if not all Home Savings' loan programs had been explained to them"). It is also worth noting that Villasenor does not allege that he was in any way pressured or forced to complete the sale. Rather, knowing the terms, he elected to go through with his purchase.[3]

---

[3]Villasegnor argues that a different line of cases apply to his "bait and switch" theory of causation. However, the "bait and switch" theory that Villasenor argues has not been addressed or ratified by either the Illinois Supreme Court of the Court of Appeals for the Seventh Circuit, and this Court elects to follow the precedent addressing proximate causation under the ILCS promulgated by those courts. *See*, *e.g.*, *Oshana*, 472 F.3d at 514, (citing *Oliveira*, 776 N.E.2d at 163-64.)

Also, notably, the two cases Villasenor relies on can be differentiated from his case. In *Williams v. Bruno Appliance & Furniture Mart*, the plaintiff, once inside the store, was subjected to high-pressure sales tactics. 379 N.E.2d 52, 52-53 (Ill.App.Ct. 1978). She also later requested a refund, which was denied, and she never actually received the items she purchased. *Id*. At 63. Also, most notably, *Williams* was decided before the actual damages requirement was added to the ICFA. 1995 IL Legis. Serv. P.A. 89-144 (S.B.317)

**Villasenor was not Damaged when he Merely Entered the VCF Store**

The only time Villasenor was possibly deceived was the time between when he saw the advertisement and the point of the intervening event, when he saw the terms of sale on the receipt. Thus, the only potential "damage" he incurred was lost time spent shopping at the store. This lost time does not constitute damages. Actual damages are either pecuniary losses, or in the case of exclusively emotional injury, "proof of a *serious* degree of distress caused by *outrageous* and not merely unlawful behavior by the defendant." *Greisz v. Houshold Bank (Illinois), N.A.*, 176 F.3d 1012, 1016 (7thCir. 1999) (emphasis in original) (citations omitted) (plaintiff's claims that she "almost fainted" and "worries every day" insufficient to establish damages under the ICFA); *see also Reid v. Watson Motorsport,* Ltd, No. 05 C 5375, 2007 U.S. DIST. LEXIS 88390, *12-*13) (N.D.Ill. November 30, 2007) (Reid not damaged by deceptive acts despite making several trips to dealership and enduring harassment because he was not a party to the contract at issue). Villasenor's potential lost time spent shopping at VCF does not amount to damages under this standard.

**CONCLUSION**

For the reasons stated herein, the Motions to Dismiss are granted with prejudice.

---

(West 1995).

In *Reid v. Watson Motorsport, Ltd.*, the defendants' behavior could be characterized as outrageous. No. 05 C 5375, 2007 U.S. DIST. LEXIS 88390 (N.D.Ill. November 30, 2007). They subjected the plaintiff to an ongoing series of deceptions over several visits to their dealership and eventually actually threatened them. *Id*. at *1-*7. Nonetheless, *Reid*'s complaint was dismissed because his fiancé, not himself, was the actual party to the contract at issue. *Id*. at *13.

7

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: March 31, 2008